UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

THE UNITED STATES OF AMERICA,
*ex rel.* JOHN PEPE M.D., and RICHARD
SHERMAN M.D.,

                Plaintiffs,                **REPORT AND RECOMMENDATION**

       v.                                      **14-CV-03505 (LDH) (ST)**

FRESENIUS VASCULAR CARE, INC., d/b/a
AZURA VASCULAR CARE, AMERICAN
ACCESS CARE PHYSICIAN, PLLC, and
GREGG MILLER, M.D.,

                Defendants.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

        The United States ("Government") filed a Complaint-in-Intervention against Defendant Fresenius Vascular Care, Inc. d/b/a Azura Vascular Care ("FVC"), alleging claims under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and at common law. The Government subsequently filed an Amended Complaint-in-Intervention, which expressly identified Gregg Miller, M.D. ("Dr. Miller") as a Defendant[1] and added American Access Care Physician, PLLC ("AACP PLLC") as an additional Defendant, a company in which Defendant Dr. Miller is President.

        In pre-motion letter briefing, FVC argued that the Government must seek leave to amend, and that leave should be denied based on alleged bad faith, prejudice and futility as to AACP PLLC. The Court rejected FVC's arguments based on bad faith and prejudice, and instructed the parties to brief the narrow question of futility in the instant Motion to Amend ("Motion"), specifically whether the Amended Complaint-in-Intervention's claims against AACP PLLC are

---

[1] Note, as discussed *infra*, Defendant Dr. Miller was already listed as a defendant in the Relators' Fourth Amended Complaint. *See* ECF 29.

1

timely and comport with Federal Rule of Civil Procedure ("Rule") 9(b).

The Honorable LaShann DeArcy Hall referred the Government's Motion to the undersigned to issue a Report and Recommendation.

For the reasons set forth below, this Court respectfully recommends that the Government's Motion to Amend be GRANTED.

I. BACKGROUND

A. Factual Background

This case concerns a civil fraud action brought by the Government against FVC, AACP PLLC[2], and Dr. Miller (collectively, "Defendants") under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, and at common law. *See* Government's Amended Complaint-in-Intervention ("ACII") at ¶ 1, ECF 63.

As an overview, the Government's ACII asserts that Fresenius Vascular Access Centers ("FVACs") located in New York scheduled "clinically-time evaluations" ("CTEs") during which interventionalists, including Defendant Dr. Miller, performed medically unnecessary vascular interventions— fistulagrams and angioplasties — on patients, most of whom were terminal because they were End Stage Renal Disease ("ESRD") patients. *Id.* at ¶¶ 2-3, 5-6, 9-10, 15, 29-30; Mot. at 2-3. Moreover, the ACII further alleges that CTE appointments were made without a referral from the patient's treating physician or dialysis center, in contravention of the requirements of Medicare and other federally-funded health care programs ("FHCPs"). *Id.* at ¶¶ 11-15, 41-58; Mot. at 3. Finally, the ACII asserts that patient records were falsified to reflect that the procedures were medically necessary and complied with the requirement for a referral from the patient's treating physician or dialysis clinic. *Id.* at ¶¶ 112-19; Mot. at 3.

---

[2] As discussed *infra*, this Court recommends granting the Government's Motion so AACP PLLC is included with the collective list of Defendants here.

As for AACP PLLC specifically, the ACII alleges that the AACP PLLC was an instrument of Defendant Dr. Miller, an alleged architect of the CTE scheme, who was one of AACP PLLC's owners in addition to being a high-ranking officer of FVC. *Id.* at ¶¶ 29-30. Furthermore, the AACP PLLC allegedly employed the interventionalists who performed the unnecessary procedures promoted by Dr. Miller and FVC, and also allegedly employed persons who falsified patient records. *Id.* at ¶ 30. Finally, the AACP PLLC allegedly submitted the false claims for payment for the medically unnecessary procedures to FHCPs. *Id.* at ¶ 30. A more specific breakdown of the parties and allegations is as follows:

1. *The Parties*

Plaintiff is the Government of the United States which brings this case on behalf of the Office of the Inspector General of the Department of Health and Human Services and the Centers for Medicare & Medicaid Services ("CMS"), which administers the Medicare and Medicaid programs at issue. *Id.* at ¶ 20. Additionally, the Relators, board-certified nephrologists Dr. John Pepe and Dr. Richard Sherman, are the original Plaintiffs to this action. *Id.* at ¶ 21.

Defendant FVC is headquartered in Berwyn, Pennsylvania. It was formed by and is a wholly owned business unit of Fresenius Medical Care Holdings, Inc. ("FMC"), a New York corporation that does business as "Fresenius Medical Care North America." *Id.* at ¶ 22. From June 20, 2017, FVC has done business as Azura Vascular Care. *Id.* at ¶ 26.

FMC is and was a wholly owned subsidiary of German company Fresenius Medical Care AG & Co. KGaA ("Fresenius AG"). *Id.* at ¶ 23. The ACII provides that FMC represents that it is the world's largest provider of dialysis products and services. *Id.*

The ACII further alleges that "FVC formed a Medical Advisory Board ('MAB'), led by its Chief Medical Officer, Defendant Miller" and that "MAB members were chosen jointly by Miller

3

and FVC's President." *Id.* at ¶ 27. Moreover, the ACII alleges that "[t]he MAB had six subcommittees whose members included FVC's president, Defendant Miller and other FVC leadership, and certain FVAC interventionalists." *Id.* at ¶ 28.

Defendant Gregg Miller, M.D. noted above is "a member of FVC's 'Senior Leadership.' " *Id*. at ¶ 29. "He is the Vice President of Operations of FVC and has been in that role since at least October 2015. Previously, he was the FVC's Chief Medical Officer. He is a member of FVC's MAB and a member of all MAB's six subcommittees. Miller is an interventional nephrologist who practiced at the FVAC in Brooklyn." *Id.* Notably, "[d]uring the relevant period, he performed fistulagrams and angioplasties on ESRD patients." *Id.*

Finally, for AACP PLLC, the ACII alleges that "American Access Care Physician, PLLC ('AACP PLLC') is a physician-owned New York professional limited liability company." *Id*. at ¶ 30. As mentioned above, "it [allegedly] employed interventionalists who performed the vascular access services at issue in this case." *Id.* "AACP PLLC submitted claims to Medicare, Medicaid, TRICARE and FEHBP (the 'Federal Healthcare Programs') for these services." *Id*. "At all relevant times, Defendant Miller had an ownership interest in AACP PLLC. Miller is also the President of AACP PLLC." *Id.* Finally, "FVC [allegedly] provided administrative and support services to the FVACs and paid for all costs expenses associated with the operation of the FVACs. AACP PLLC reimbursed FVC for these costs from monies received from Federal Healthcare Programs." *Id.* at ¶ 31.

2. *Defendants' Alleged Fraudulent Scheme*

The Government details Defendants' alleged fraudulent scheme (the "CTE Scheme") as follows in ACII ¶ 15:

- After an initial referral to an FVAC from a patient's treating nephrologist or dialysis clinic, the FVACs routinely scheduled follow-up appointments

4

- or so-called "clinically timed evaluations" ("CTEs") without a further referral from a medical official.

- Prior to a CTE appointment, FVACs did not request any information concerning a patient's recent dialysis treatment from that patient's treating nephrologist or the dialysis clinic that was administering dialysis. In many cases, the records documenting administration of dialysis at the patient's clinic in the days before a CTE demonstrated with quantifiable, objective measures that the patient was dialyzed without any issues.

- Nonetheless, the FVACs brought patients in for a CTE, during which patients received a precursory physical exam. Significantly, the FVAC then recorded a pretextual indication to justify subjecting the patient to a fistulagram, which was followed by an angioplasty, for which the FVAC exaggerated the amount of vascular narrowing or stenosis.

- To ensure robust revenues, Defendants essentially enrolled ESRD patients into a course of CTEs. Upon discharge, the FVACs would schedule additional "follow-up" visits. Critically, the FVACs planned to perform vascular interventions at each CTE. Indeed, FVACs frequently gave patients written instructions that included not only the date of the next CTE but directions not to eat or drink for four hours prior to the appointment time, thus assuming that surgery would be necessary. The potentially harmful fistulagrams and angioplasties—which should not be presumptively considered routine—became routine for these ESRD patients.

The Government alleges "[t]he FVACs at issue performed thousands of angioplasties on ESRD patients that were not medically necessary, in furtherance of Defendants' CTE Scheme." *Id.* at ¶ 16. FVC allegedly "had full knowledge that the procedures were not necessary" and that "Defendants nonetheless took advantage of patients to promote its own financial gain. This conduct came at a cost to patients." *Id.* at ¶¶ 16-17. Defendants allegedly also knew that the interventions carried serious medical risks. *Id.* at ¶ 18. [3]

---

[3] Specifically, the Government's Counts are the following: ¶¶ 316-18 (Count One: Violation of 31 U.S.C. § 3729(a)(1)(A)); ¶¶ 319-21 (Count Two: Violation of 31 U.S.C. § 3729(a)(1)(B)); ¶¶ 322-24 (Count Three: Violation of 31 U.S.C. § 3729(a)(1)(G)); ¶¶ 325-27 (Count Four: Unjust Enrichment); and ¶¶ 328-30 (Count Five: Payment Under Mistake of Fact).

B. **Procedural History**

On June 4, 2014, Relators Drs. John Pepe and Richard Sherman ("Relators") filed their initial *qui tam* Complaint. *See* ECF 1.[4] The Relators amended their Complaint on February 6, 2015, December 7, 2016, October 26, 2017, and on August 7, 2020, respectively. *See* ECF 14, 19, 22[5] and 29.[6] On April 18, 2022, the Government partially intervened in this action. *See* ECF 42. On May 9, 2022, the Court unsealed the Relators' Fourth Amended Complaint and directed the Government to file its Complaint-in-Intervention ("CII") by July 8, 2022. *See* ECF 44.

Based upon the Court's Order dated July 7, 2022, the Government filed its CII on July 12, 2022. *See* ECF 45 and related Order dated July 7, 2022, and ECF 48. On August 2, 2022, the Government filed its Amended Complaint-in-Intervention ("ACII"), *see* ECF 63, and a pre-motion conference letter. *See* ECF 64. On August 9, 2022, Defendant FVC filed its Response letter ("FVC Letter") to the Government's pre-motion conference letter. *See* ECF 67.

After receiving permission from the Court to respond to the FVC Letter/Opposition on August 16, 2022, *see* ECF entry dated August 16, 2022, the Government filed its Reply on August 18, 2022. *See* ECF 72 and 83. On October 13, 2022, the Court held, *inter alia*, that FVC failed to establish bad faith and prejudice and directed the Government and FVC to brief the narrow issue of futility only, focusing on timeliness and Rule 9(b) particularity as to AACP PLLC. *See* ECF entry dated October 13, 2022.

On December 5, 2022, the parties filed the fully briefed instant Motion. *See* ECF 89.[7] On December 7, 2022, the Honorable LaShann DeArcy Hall referred the instant Motion to this Court.

---

[4] Note, ECF 1 is dated June 4, 2014, but the Complaint is dated June 3, 2014.

[5] Note, ECF 22 is dated October 26, 2017 but the Third Amended Complaint is dated October 24, 2017.

[6] As noted earlier, Defendant Dr. Miller was already a party in the Relators' Fourth Amended Complaint. *See* ECF 29. Moreover, neither the Court's October 13, 2022 Order nor the Opposition contests that Dr. Miller is a Defendant and he will, therefore, be considered a Defendant in the forthcoming analysis.

[7] Note, the Government's initial Motion is dated November 3, 2022; FVC's Opposition is dated November 28, 2022 and the Government's Reply is dated December 5, 2022.

*See* ECF entry dated December 7, 2022.

## II. JURISDICTION

This Court has jurisdiction under 31 U.S.C. § 3730 *et seq.* and 28 U.S.C. §§ 1331 and 1345.

## III. DISCUSSION

### A. The Government is Entitled to Amend the CII as a Matter of Course Under Rule 15(a)(1) and Section 3731(c) of the FCA.

This Court concludes that the Government may amend the CII as a matter of course under Rule 15(a)(1). Rule 15(a)(1) allows a plaintiff to "amend its pleading once as a matter of course" within certain time limits. *See* Fed. R. Civ. P. 15(a)(1); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 224 F.R.D. 534, 535 (E.D.N.Y. 2004) (finding that leave of court is not necessary when a party may amend its pleading once as a matter of course under Rule 15(a)(1)). The wrinkle in the instant procedural posture is that the Government initially filed a Complaint-in-Intervention, which some courts have treated as akin to an *Amended Complaint* rather than an original pleading. Thus, the Government's Motion here is arguably the *second* amendment rather than the first. *See U.S. ex rel. Bilotta v. Novartis Pharm.*, 50 F. Supp. 3d 497, 513 n.5 (S.D.N.Y. 2014) (holding that "the effect of the Government's Complaint-in-Intervention on Relator's complaint is akin to the effect of an amended complaint on an initial complaint."); *U.S. ex rel. Estate of Gadbois v. PharMerica*, 292 F. Supp. 3d 570, 577-78 (D.R.I. 2017) (citing cases for same proposition).[8]

The Government correctly notes that in 2009, Congress amended the FCA and added language stating that the Government may intervene in a *qui tam* matter like this case and "file its own complaint." *See* 31 U.S.C. §3731(c); Mot. at 3. Section 3731(c) states that: "If the Government elects to intervene and proceed with an action brought under 3730(b), the

---

[8] Note, the Court recognizes that New York federal court precedent is limited regarding complaints-in-intervention under the FCA and therefore refers to cases from outside jurisdictions as persuasive authority, as the parties have done in their briefing as well.

7

Government may file its *own complaint* or amend the complaint of a person who has brought an action under section 3730(b) to clarify or add detail to the claims in which the Government is intervening. . ." *Id.* (emphasis added). Hence, the Government argues that it "complied with the plain terms of this section when it filed the CII on July 12, 2022" and may amend now as a matter of course. Mot. at 3. For the reasons below, this Court agrees.

First, neither party cites, nor has this Court been able to find, any case law where the Government files a CII and then seeks to amend the CII under 31 U.S.C. §3731(c) and Rule 15(a)(1) as a matter of course. While cases discussed above treat the Government's original CII as akin to an Amended Complaint for relation back purposes, they do not answer the posture of when the Government seeks to amend a CII for the first time *post-enactment* of Section 3731(c). Hence, this Court looks to the plain meaning of Section 3731(c) for this issue of first impression. Upon doing so, this Court concludes that the plain meaning of Section 3731(c) and the interplay with Rule 15(a)(1) is unambiguous based upon the phrase "own complaint" in Section 3731(c). *See Osuna v. Gov't Emps. Ins. Co.*, No. 11-CV-3631 JFB AKT, 2014 WL 1515563, at *8 (E.D.N.Y. Apr. 17, 2014), *aff'd*, 623 F. App'x 3 (2d Cir. 2015) (quoting *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999)) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms.").[9] Here, the Government chose to file its "own complaint" under Section 3731(c) and then sought to amend its "own Complaint" once as a "matter of course" under Rule 15(a)(1).[10]

---

[9] Relatedly, this Court disagrees with the Opposition's argument that "[i]n codifying the ability of a complaint-in-intervention to relate back to the relator's complaint" as Section 3731(c) does, the 2009 amendment cannot be read as permitting amendments as a matter of course since "[a]n original complaint has nothing to relate back to; the doctrine of relation back is for amended pleadings." *See* Opp. at 4. Again, this Court does not see an inconsistency with the plain meaning of the applicable law. The Government's "own" CII may now "relate back" to the Relators' original Complaint for statute of limitations purposes/calculation, but that still does not prohibit the Government from amending its "own" CII once as a matter of course.

[10] There is no dispute here that the Government sought to amend within 21 days as required by Rule 15(a)(1). *See* ECF 48 [CII filed on July 12, 2022] and ECF 63 [ACII filed on August 2, 2022].

8

Second, this Court also agrees that the Opposition's remaining case law is inapposite since it pre-dates the 2009 amendment in Section 3731(c), despite that the Government previously argued in earlier cases that a CII has the same effect as an Amended Complaint. *See, e.g.*, Opp. at 4 (citing *U.S. ex rel. Serrano v. Oaks Diagnostics*, 568 F. Supp. 2d 1136, 1140 (C.D. Cal. 2008); *U.S. ex rel. Purcell v. MWI*, 254 F. Supp. 2d 69, 75 (D.D.C. 2003) ("The government responds by stating flatly that its complaint amends the relator's complaint" and "it cannot be viewed as a new party-plaintiff when it elects to intervene.")). To be clear, the Opposition does identify one case where the District Court specifically held that the Government could not amend its CII as a matter of course. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 538 F. Supp. 2d 392, 396 (D. Mass. 2008) (construing Complaint-in-Intervention as akin to Amended Complaint and holding "[a]s such, the government was obligated to move to amend pursuant to Fed.R.Civ.P. 15(a)(2) when seeking to amend the complaint in intervention."); Opp. at 4. However, *In re Pharm.* also pre-dates the 2009 amendment and the plain language of the Government's "own complaint."[11] Moreover, this Court reiterates that *In re Pharm* and the Opposition's other cited authority is from outside jurisdictions and is therefore not binding on this Court. [12]

Third, although not required since Section 3731(c)'s plain meaning governs, this Court also concludes that allowing the Government to amend under Rule 15(a)(1) furthers Section

---

[11] Note, *U.S. ex rel. Borges v. Doctor's Care Med. Ctr.*, 2006 WL 8433954, at *2 (S.D. Fla. Aug. 24, 2006) cited as a *see also* at Opp. at 4 is distinguishable for the same reasons. Additionally, this Court also notes the following discussion in *Borges* that is applicable *infra* regarding leave to amend: "The debate over the proper designation for the Amended Intervening Complaint is *academic*, however. The Government has requested leave, nunc pro tunc, to file the Amended Intervening Complaint. A district court's discretion to dismiss a complaint without leave to amend 'is *severely restricted*' by Fed.R.Civ.P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.' " (citations omitted) (emphasis added).

[12] This Court also disagrees with the Opposition's argument that "[i]n directing the parties to 'brief the narrow issue of futility only'—an issue for amendments requiring court approval under Rule 15(a)(2)—the Court implicitly rejected the government's claim to an absolute right to amend under Rule 15(a)(1)." *See* Opp. at 3 (quoting ECF Entry dated October 13, 2022). The District Court's referral of the instant Motion to this Court for a Report and Recommendation has no bearing on the *merits* of the parties' arguments.

3731(c)'s legislative purpose "to improve enforcement of … frauds." *See* Mot. at 5. Indeed, the Government may add applicable parties/claims to fully cover the fraudulent activity at issue while avoiding the risk of a court declining leave to amend under Rule 15(a)(2). Hence, this Court recommends that the Government be allowed to amend as a matter of course.

**B. The Court Also Concludes in the Alternative That Leave to Amend is Proper Under Rule 15(a)(2) and that the Government's Proposed Amendment is Not Futile Under Rule 9(b).**

*1. Applicable Legal Standards*

Even if the Government could not amend as a matter of course under Rule 15(a)(1), this Court also concludes that leave to amend is appropriate under Rule 15(a)(2) and that the Government's proposed amendment is not futile under Rule 9(b). Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should *freely give leave when justice so requires*." (emphasis added). Thus, it is "rare" that such leave should be denied. *Saraiva v. Citigroup, Inc. et al.*, No. 01CIV3298LMMGWD, 2001 WL 869619, at *1 (S.D.N.Y. Aug. 1, 2001) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Indeed "it is within the sound discretion of the district court to grant or deny leave to amend." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A party should be allowed to amend a Complaint in the absence of a showing by the nonmovant of "bad faith, *futility* of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005) (quotations and citations omitted) (emphasis added); *Zucker v. Porteck Glob. Servs., Inc., et al.*, No. 13-CV-2674, 2015 WL 6442414, at *4 (E.D.N.Y. Oct. 23, 2015) (Seybert, J.).[13]

---

[13] This Court also notes that "[b]ecause the ACII adds a party, Rules 20(a) and 21 are also pertinent." Mot. at 5 n.2; Fed. R. Civ. P. 20(a), 21. However, the Government is also correct that "in analyzing a motion to amend, 'there is in

10

"When determining futility, the court reviews the viability of the proposed claim pursuant to the same standard invoked with respect to a Rule 12 motion to dismiss." *Torres v. D.J. Southhold Inc. et al.*, 2:17-CV-05123-SJF-AYS, 2018 WL 3653271, at *3 (E.D.N.Y. Jul. 12, 2018) (Shields, M.J.) (citations omitted). "[T]he claim sought to be asserted must plead facts sufficient to support a plausible claim to relief." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In general, while detailed factual allegations are not required, the complaint must contain more than mere 'labels and conclusions.' " *Robinson v. De Niro*, No. 19-CV-9156 (KHP), 2021 WL 2887702, at *2 (S.D.N.Y. July 9, 2021). However, since FCA claims sound in fraud, the allegations "are subject to Rule 9(b)[,]" whereby "a party must state with particularity the circumstances constituting fraud…. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See U.S. ex rel. Chorches as Trustee for the Bankruptcy Estate of Paul Fabula, et al. v. American Medical Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (quotations and citations omitted); Fed. R. Civ. P. 9(b).

Rule 9(b)'s particularity requirement is satisfied with allegations that: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Chorches*, 865 F.3d at 81 (quotations and citations omitted). " '[T]he adequacy of particularized allegations under Rule 9(b) is … case- and context-specific.' " *Id.* (quoting *Espinoza ex rel. JPMorgan Chase*

---

practical terms little difference between them' and Rule 15." *Id.*; *Franco v. Ideal Mortg. Bankers, Ltd.*, No. CV 07-3956 JS/AKT, 2009 WL 3150320, at *3 n.3 (E.D.N.Y. Sept. 28, 2009), *order aff'd*, *appeal dismissed*, No. 07-CV-3956 JS/AKT, 2009 WL 3756664 (E.D.N.Y. Nov. 3, 2009); *FTD Corp. v. Banker's Trust Co.*, 954 F. Supp. 106, 109 (S.D.N.Y.1997) ("Although Rule 21, and not Rule 15(a), normally governs the addition of new parties to an action, 'the same standard of liberality' applies under either Rule.") (quoting *Fair Housing Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)). Moreover, Rule 21 states that "the court may at any time, on just terms, add or drop a party." *See* Fed. R. Civ. P. 21. Considerations include "the use of judicial resources, the impact the amendment would have on the judicial system, and the impact the amendment would have on each of the parties already named in the action." *Michalek v. Amplify Sports & Ent. LLC*, No. 11 CIV. 508 PGG, 2012 WL 2357414, at *3-4 (S.D.N.Y. June 20, 2012). Notably the Opposition does not contest any of this authority or offer any cases to the contrary.

11

*& Co. v. Dimon, et al.*, 797 F.3d 229, 236 (2d Cir. 2015)). "This heightened pleading standard is designed to provide a defendant with fair notice of a plaintiff's claim…." *U.S. ex rel. Mooney v. Americare, Inc., et al.*, No. 06-CV-1806 (FB)(VVP), 2013 WL 1346022, at *2 (E.D.N.Y. Apr. 3, 2013) (quotations and citations omitted).[14]

### 2. *The ACII Alleges AACP PLLC's Violations with Particularity*

This Court concludes that the Government's ACII alleges AACP PLLC's violations with particularity. Here, the Government's ACII specifically mentions AACP PLLC in four paragraphs: ¶ 1 to identify AACP PLLC as a defendant; ¶ 30 to indicate that Defendant Greg Miller "at all relevant times" had "an ownership interest in AACP PLLC," that Defendant Miller "is also the President of AACP PLLC,"[15] and that AACP PLLC "employed interventionalists who performed the vascular access services at issue. . . " and "submitted claims" for these services; ¶ 31 to allege that "AACP PLLC reimbursed FVC for [FVAC] costs from monies received from Federal Healthcare Programs"; and ¶ 232 to allege that AACP PLLC "submitted the claims for payment to the Federal Healthcare Programs." Importantly however, the Government also argues that: "[i]n addition to these allegations, the ACII sets forth numerous facts concerning Miller, and his role in the CTE scheme. As AACP PLLC's co-owner and President, Miller's fraudulent intent *can be imputed* to AACP PLLC." Mot. at 10 (emphasis added). Hence, the issue is whether imputation plus the allegations against AACP PLLC mentioned above satisfy Rule 9(b). For the below reasons, this Court concludes that Rule 9(b) is satisfied via imputation.

The Government relies on two imputation cases. *See* Mot. at 10-11 (citing *In re Henry Schein, Inc. Securities Litig.*, 18-CV-01428 (MKB), 2019 WL 8638851, at *23 (E.D.N.Y. Sept.

---

[14] The Court also notes that Judge Hall's Order dated October 13, 2022, *see* ECF entry dated October 13, 2022, and the Government's Motion both agree that Rule 9(b) applies. *See* Mot. at 9.

[15] Notably, the Opposition does not dispute that Defendant Miller is AACP PLLC's President and co-owner. *See* Opp. at 2, 6 and 8-10.

12

27, 2019) (sufficiently alleged scienter as to President of Schein's North American Dental Group which can be imputed to Schein because in "oversee[ing] operations" and "manag[ing] employees," that demonstrated that President was "sufficiently senior to be considered a 'management level' employee. . .") and G*oldman v. McMahan, Brafman, Morgan & Co., et al.*, No. 85 Civ. 2236 (PKL), 1987 WL 12820, at *10 (S.D.N.Y. Jun. 18, 1987) (denied in part Rule 12(b)(6) motion holding that "even if the Complaint did not plead G&D's knowledge, Lane's knowledge is imputed to G&D since he is the president of G&D"; thus, upheld claim of secondary liability under § 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934) (citations omitted)).

Notably, the Opposition does not dispute that the Government's cited case law supports the general proposition that a high-ranking corporate officer's knowledge may be imputed to the corporation. *See* Reply at 2; Opp. at 8-9. Moreover, this Court is unpersuaded by the Opposition's attempt to distinguish the Government's case law. Specifically, the Opposition argues that *In re Henry* is distinguishable because "[t]he complaint alleged in detail that one such executive had specific communications with counterparts at two competitors to discuss and implement the 'conspiracy' and detailed the contents of their interactions" and there are "no analogous allegations" here made "on behalf of AACP" concerning Dr. Miller. Opp. at 10.

Importantly, however, *In re Henry* also provides that "[t]*here is no formulaic method* or seniority prerequisite for employee scienter to be imputed to the corporation, but scienter by management-level employees is generally sufficient to attribute scienter to corporate defendants." *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *22 (quoting *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 90-91 (S.D.N.Y. 2017)) (emphasis added); *see also In re Vale S.A. Sec. Litig.*, No. 15-CV-9539, 2017 WL 1102666, at *34 (S.D.N.Y. Mar. 23, 2017) ("Courts *routinely* impute to the corporation the intent of officers and directors acting within the scope of

13

their authority.") (emphasis added). Hence, there is no such "formulaic" requirement for alleging imputation and the Government's allegations concerning Defendant Dr. Miller need not specifically state "on behalf of AACP" in order to grant the instant Motion.

Similarly, the Court also disagrees with Defendants' attempt to distinguish *Goldman v. McMahan, Brafman, Morgan & Co.*, No. 85 CIV. 2236 (PKL), 1987 WL 12820, at *10 (S.D.N.Y. June 18, 1987), which rests upon Defendants' assertion that "[t]he claim against the brokerage company was based on secondary 'aiding and abetting' liability, and there were allegations it had knowledge of the underlying fraud, *apart from its president*." Opp. at 10 (emphasis added). Notably, *Goldman* directly contradicts Defendants' argument that knowledge must be asserted "apart from" the Company's president and states that: "*even if the Complaint did not plead G&D's knowledge*, Lane's knowledge is imputed to G&D since he is the president of G&D." *Goldman*, 1987 WL 12820, at *10 (emphasis added). Thus, there is no requirement that the Government needed to assert that AACP PLLC possessed knowledge "apart from" Defendant Dr. Miller and this Court concludes that Defendant Dr. Miller's conduct may be imputed to AACP PLLC.[16]

Here, the ACII is replete with references of Defendant Dr. Miller's conduct,[17] such as:

- ¶ 29 ("During the relevant period, [Miller] performed fistulagrams and angioplasties on ESRD patients.");

- ¶ 132 ("In 2013, Miller and other MAB members drafted a 'CTE White Paper' (the 'White Paper'), which promoted and purported to justify the CTE Scheme."); ¶ 149 ("By Miller's

---

[16] This Court is also unpersuaded by Defendants' argument that vicarious liability should not apply here because "whether the theory of vicarious liability applies to FCA violations is an open question in the Second Circuit." *See* Opp. at 9. As the Government's Reply correctly notes, the Opposition relies on dicta in *U.S. v. Strock*, 982 F.3d 51, 68 n.8 (2d Cir. 2020)) where the Second Circuit still upheld an FCA claim based upon vicarious liability, as other courts have done. *Id.* at 68.; Reply at 1-2. Additionally, this Court also rejects the Opposition's attempt to distinguish *U.S. ex rel. Chorches as Trustee for the Bankruptcy Estate of Fabula*, 865 F.3d at 81-82 because the Opposition does not contest the general proposition that Rule 9(b)'s requirements can be met with "allegations … based on information and belief when facts are *peculiarly within* the opposing party's knowledge.") (citation omitted) (emphasis added)). *See* Opp. at 11; Reply at 2.

[17] The Court agrees with the Opposition that *United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 580-81 (M.D. Tenn. 2021) relies upon "numerous specific allegations", *see* Opp. at 12, when concluding that Rule 9(b) is satisfied, but this Court also concludes that sufficient specificity is alleged here when imputation from Defendant Dr. Miller is appropriately considered.

own admission, the White Paper was incomplete because it was not supported by clinical trials."); ¶ 151 ("Defendants nonetheless promoted and implemented the White Paper.");

- ¶ 170 ("As Chief Medical Officer, Miller played a critical role in the hiring of FVAC physicians.");

- ¶ 174 ("Miller pressured FVAC physicians to perform more interventions. Miller told one physician who questioned whether procedures were clinically necessary, in sum or substance, 'How can you expect to make money if you are sending 80% of the patients home.' "); ¶ 178 ("An FVAC physician, frustrated with the pressure to perform CTEs and Miller's threats to monitor his work, told Miller to look at the patient images himself: 'You're telling me to treat something, and I don't see anything to treat.' ");

- ¶ 185 ("The Brooklyn FVAC, where Miller was the Medical Director, set targets for number of ESRD procedures, including fistulagrams and angioplasties, quotas for 'renal cases' and congratulated the office team when those numbers were met and exceeded.");

- ¶ 233 ("High level FVC executives, including Miller, were aware of the specifics of the claims process.");

- ¶ 259 ("In total for this period, after a fistulagram, FVAC interventionalists, including Miller, performed 9 medically unnecessary angioplasties on Patient D.").[18]

Per the above imputation discussion, this Court concludes that the Opposition's own Rule 9(b) case law is distinguishable. First, the Opp. at 7 relies on *Wood ex rel. U.S. v. Applied Research Assocs.*, 328 F. App'x 744, 749-50 (2d Cir. 2009), but the relator in *Wood* did not allege that the defendants were *related entities* or that there was any imputation. *See* Reply at 3. Second, in *U.S. ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 695 (S.D.N.Y. 2018), the relator alleged "nothing in particular about any of the Servicer Defendants except that they serviced mortgages. . ." Third, in *U.S. ex rel. Levine, M.D. v. Vascular Access Centers L.P.*, 12 Civ. 5103 (LGS), 2020 WL 5534670, at *7 (S.D.N.Y. Sept. 15, 2020), Rule 9(b) was not satisfied where

---

[18] The Court also notes that the Opp. at 7 n.1 is correct that "[t]he assertion in the government's brief that 'AACP PLLC employees were responsible for falsifying patient records' has no citation, [and] is not alleged in the complaint." However, this Court concludes that given the imputation discussion above, the lack of a citation specifically linking AACP PLLC to the falsified records does not alter the basis for this Court's recommendation of leave to amend. Notably, ACII ¶¶ 112-19 discuss the falsification of patient records by Defendants. *See e.g.*, *id.* at ¶ 113 ("Similarly, Defendants often falsified patient records. . ."). Additionally, paragraph 233 links Defendant Dr. Miller to the record falsification stating that: "High level FVC executives, *including Miller*, were aware of the specifics of the claims process." (emphasis added).

15

Plaintiff alleged that "patient feedback made it 'virtually inevitable' that all … Defendants would be aware of the unnecessary procedures …" and nevertheless " 'continued to feed a steady stream of patients to these fraudulent vascular access centers [and] perform[] unnecessary procedures. . .' " Finally, in *U.S. ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 Fed. App'x. 92, 94 (2d. Cir. 2017), Rule 9(b) was not satisfied where Plaintiff "failed to plead facts as to each [unrelated] defendant's obligation to repay the government."; Reply at 3-4 n.9.[19]  Here, this Court concludes that Rule 9(b) specificity is satisfied via imputation of Defendant Dr. Miller's conduct, as set forth in the numerous references above.[20]  Indeed, leave is especially appropriate here where the Government's ACII essentially functions as a Motion to Supplement a Pleading under Rule 15(d).

### C. The Government's FCA Claims Against AACP PLLC Are Timely Under the Applicable Statute of Limitations.

This Court also concludes that the Government's FCA claims against AACP PLLC are timely under the applicable statute of limitations.  Notably, both the Opposition itself and Defendants' Response to the Government's Request for a Pre-Motion Conference implicitly concede that at least *some* claims against AACP PLLC are timely.  *See* FVC Letter at 3 (arguing claims are "largely" but not totally "time-barred" under 31 U.S.C. § 3731(b)(1)), ECF 67; Opp. at 12 ("The applicable statutes of limitation are only six years, rendering untimely any claims against new defendant AACP based on conduct prior to August 2, 2016—*the majority of* the period purportedly covered by the government's proposed claims.") (emphasis added); *see also* Mot. at

---

[19] Relatedly, this Court also concludes that the remaining Rule 9(b) cases relied upon by the Opposition do not show that the Government improperly "lumped" AACP "together with FVC and Dr. Miller via a collective definition of 'Defendants' asserting they all engaged in the same alleged conduct." *See* Opp. at 8.  Again, none of the Opposition's cited case law involves principles of imputation analogous to the present case.  For example, *see DiVittorio v. Equidyne*, 822 F.2d 1242, 1247-49 (2d Cir 1987) (holding that complaint should inform each defendant of the nature of his alleged participation in the fraud, when case did *not* involve imputation); *U.S. ex rel. Aryai v. Skanska*, 2019 WL 1258938, at *8-9 (S.D.N.Y. Mar. 19, 2019) (involving no allegations of corporate imputation where the relator did not satisfy Rule 9(b)'s requirement because it alleged conduct by unrelated construction companies as a group).

[20] To the extent Defendants believe subsequent motion practice is appropriate, such as after the parties exchange discovery, Defendants may pursue further motion practice at that time.

16

7. Because the parties agree that at least some claims are within the statute of limitations period, this Court concludes that Defendants' statute of limitations arguments fails for that reason alone.

Additionally, since this Court has already concluded that the Government is entitled to amend as a matter of course under Rule 15(a)(1), this Court further recommends that the Government's *entire* ACII relate back to the Relators' initial Complaint for statute of limitations purposes.[21] Rule 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back. . ." In a *qui tam* case where the Government files a Complaint in Intervention "[f]or statute of limitations purposes, any such Government pleading shall relate back to the filing date of the complaint of the person who originally brought the action, to the extent that the claim of the Government arises out of the conduct, transactions, or occurrences set forth, or attempted to be set forth, in the prior complaint of that person." 31 U.S.C. §3731(c). Finally, Section 3731(c)'s "relation back doctrine had been broadly construed by the Courts to ensure liberal recovery for fraud against the United States." *Aldridge on behalf of U.S. v. Corp. Management Inc., et al.*, No. 1:16-CV00369, 2021 WL 1521697, at *6 (S.D. Miss. Apr. 16, 2021).[22] Given that the Government may amend as a matter of course under Rule 15(a)(1), Section 3731(c) is the "applicable law."

Here, the Government argues that "the entire ACII relates back to the date of the Relators' original complaint – June 3, 2014." Mot. at 7. Because the Relators were the party that "originally brought the action" and because there is no dispute that the allegations contained in the ACII "arise out of the conduct, transactions, or occurrence" in the Relators' original Complaint, this Court concludes that relation back for *all* claims is proper, including the claims that Defendants assert

---

[21] Again, this Court notes that the statute of limitations issue concerning Section 3731(c) with the instant procedural posture is an issue of first impression before this Court.

[22] As discussed *supra*, FCA precedent concerning the 2009 amendment in Section 3731(c) is limited and this Court will, therefore, consider the persuasive authority from other jurisdictions as needed.

17

are time-barred.[23]

Alternatively, even if the Government may only amend under Rule 15(a)(2), this Court still concludes that the entire ACII relates back to the Relators' original Complaint. Under Rule 15(a)(2) any further amendments of the CII are not governed by § 3731(c) but, instead, by Rule 15, including the requisite notice requirements. Opp. at 13-14. Specifically, Rule 15(c)(1)(C) requires that the party to be added "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See* Rule 15(c)(1)(C); Opp. at 14. However, this Court concludes these requirements are satisfied.

First, the Opposition never asserts any *prejudice* to Defendants if the Court grants leave to amend and merely notes that "AACP did not receive the notice required for relation back under Rule 15(c)(1)(C)." Opp. at 15. Therefore, leave to amend remains appropriate.

Second, the Opposition also argues that "[t]he government does not claim to have made any mistake regarding AACP. Failing to identify and name 'individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.' " Opp. at 14 (quoting *Doe v. New York*, 97 F. Supp. 3d 5, 18 (E.D.N.Y. 2015)).[24] Given the liberality in which courts grant leave to amend, this Court concludes that this requirement is satisfied as well. Indeed, AACP PLLC "knew or should have known" that it would likely face litigation given that

---

[23] Given that both parties have not cited any case law, nor has this Court been able to find any, concerning whether Section 3731(c) applies to additional *parties* and not just additional claims, the Court will defer to the liberality of the Federal Rules in allowing amendments discussed *supra*, which provides that in analyzing a motion to amend, "there is in practical terms little difference" between Rules 20(a) and 21 concerning parties and Rule 15. *Franco*, 2009 WL 3150320, at *3 n.3 (quotations and citations omitted).

[24] Additionally, the Opposition also notes a prior case where the Government previously conceded that defendants who "were not named as defendants in the qui tam Complaint …. cannot relate back," Opp. at 14 and argues leave is inappropriate here since the Government investigated the Relators' claims "for nearly seven years." *Id.* (citing *U.S. ex rel. Robinson-Hill v. Nurses' Registry*, 2012 WL 4598699, at *8 (E.D. Ky. Oct. 2, 2012)). However, this case is not binding here.

18

Defendant Dr. Miller is the Company's President and that he has an ownership interest in AACP PLLC. Furthermore, the Opposition does not identify any authority requiring the Government to specifically state that the Government "made a mistake" when seeking leave to amend. Thus, Defendants' statute of limitations argument fails even if leave to amend is granted.

## IV.  CONCLUSION

For the foregoing reasons, this Court recommends that the Government's Motion to Amend be granted in its entirety.

## V.  OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

    /s/ Steven L. Tiscione  
Steven L. Tiscione  
United States Magistrate Judge  
Eastern District of New York

Dated: Central Islip, New York  
June 30, 2023