UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
THE UNITED STATES OF AMERICA, *et al.*, *ex rel.*
JOHN PEPE M.D., and RICHARD SHERMAN
M.D.,

                            Plaintiffs,        **MEMORANDUM & ORDER**

         -against-           **14-cv-03505-LDH-ST**

FRESENIUS MEDICAL CARE HOLDINGS,
FRESENIUS VASCULAR CARE, INC., and
GREG MILLER, M.D.,

                            Defendants.
---------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

       John Pepe, M.D., and Richard Sherman, M.D., ("Relators") brought this qui tam action against Defendants Fresenius Medical Care Holdings, Fresenius Vascular Care, Inc., and Gregg Miller, M.D. ("Defendants"), on behalf of the United States of America and the States of New York, New Jersey, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Louisiana, Maryland, Michigan, Nevada, North Carolina, Rhode Island, Tennessee, Texas, and the Commonwealths of Massachusetts and Virginia (the "States"), alleging claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq., analogous state laws ("State FCA laws"), and the California Insurance Fraud Protection Act ("CIFPA"). The United States partially intervened as to the federal FCA counts, pursuant to 31 U.S.C. § 3730. The States of New York, New Jersey, and Georgia filed a consolidated complaint-in-intervention, and the California Department of Insurance intervened on behalf of the State of California as to CIFPA claims. On October 31, 2024, the District Court dismissed Relators' non-intervened claims. On August 4, 2025, Relators filed

their Motion for Leave to Amend their Complaint ("Motion"). For the reasons discussed below, this Court GRANTS the Motion.[1]

## BACKGROUND[2]

Relator John Pepe, M.D., is a board-certified internist and kidney specialist, who works as an attending physician at Richmond University Medical Center and Staten Island University Hospital in New York. Relators' Fourth Amended Complaint ("FAC") ¶ 15, ECF No. 29. Relator Richard Sherman, M.D., is a kidney specialist who serves as professor emeritus of medicine at Rutgers University and Medical Director of Dialysis at the Robert Wood Johnson University Hospital in New Jersey. *Id.* at ¶ 16. Defendant Fresenius Vascular Care, Inc. ("FVC") is one of the largest clinic networks for interventional radiology in North America. *Id.* at ¶ 26. In 2011, FVC's parent company, Fresenius Medical Care North America ("FMCNA"), acquired American Access Care Holdings ("AAC"), a clinic network that included 28 freestanding outpatient centers providing vascular access treatment to dialysis patients in New York and elsewhere in the United States. *Id.* at ¶¶ 26, 28. Following the acquisition, AAC clinics were operationally integrated into the FVC chain. *Id.* at ¶ 29. According to its website, FVC operates 66 vascular access clinics in approximately 25 states and Puerto Rico, including 12 in New York State and four in New Jersey. *Id.* Approximately 76% of FMNCA's patient base is covered through Medicare and Medicaid. *Id.* ¶ 108. Defendant Gregg Miller, M.D., has been FVC's Vice President of Operations since 2015.

---

[1] "[T]he weight of authority in this Circuit . . . indicate that motions to amend are non-dispositive." *Getman v. Vondracek*, 731 F.Supp.3d 524, 528 (W.D.N.Y. 2024) (citations and quotations omitted); *see Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) ("As a matter of case management, a district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent."). "This Court is of the view that a grant of a motion for leave to amend is nondispositive." *Partminer Info. Servs., Inc. v. Avnet, Inc.*, 7-cv-11482 (LMM), 2009 WL 111958, *1 (S.D.N.Y. Apr. 21, 2009). As such, should the Parties file any objections, a review of this Report & Recommendation under the clearly erroneous standard is appropriate. *See id.*

[2] In giving this background, the Court initially refers to the allegations contained in the Fourth Amended Complaint before providing those new allegations in the Fifth Amended Complaint in order to more clearly spell out what allegations are specifically being proposed in Relators' Fifth Amended Complaint. *See generally* Fourth Amended Compl., ECF No. 29; *see also* Fifth Amended Compl., ECF No. 146.

*Id.* ¶ 31. Previously, Defendant Miller was FVC's Chief Medical Officer, and prior to that, he operated AAC of Brooklyn. After FMNCA's 2011 acquisition of AAC, Defendant Miller was appointed Chief Medical Officer of FVC. *Id.* ¶ 131. Defendants own and operate several health care facilities that perform, among other things, fistulagrams, angiograms, and angioplasties. *Id.* at ¶ 118. Fistulagrams are x-rays of fistula, angiograms are x-rays of blood vessels, and angioplasties are the widening of blood vessels by inserting and inflating a small ballon. *Id.* When properly administered, these procedures can improve the efficacy of dialysis treatments. *Id.* Medical staff monitor patients on dialysis to ensure that the treatment functions effectively. *Id.* at ¶ 119. Specifically, medical staff monitor blood flow, blood vessel pressure, and waste removal measures, among other metrics. *Id.* If medical staff determine that a patient's vascular access is so compromised that it interferes with dialysis, the staff may refer that patient to one of Defendants' clinics for a onetime procedure to restore sufficient vascular access. *Id.* at ¶ 123. In Spring 2011, Defendant Miller approached Relator Pepe in an unsuccessful attempt to purchase his dialysis practice. *Id.* at ¶ 129. During their discussions, Defendant Miller told Relator Pepe that if a dialysis center were owned by AAC or its new parent, FMNCA, the company could self-refer patients from its dialysis center to its vascular access clinics. *Id.* at ¶ 130. Defendant Miller has made several public presentations to physicians on behalf of Fresenius endorsing the use of surveillance fistulagrams. *Id.* at ¶ 131. For example, during one presentation, Defendant Miller represented that patients should return for scheduled follow-up elective fistulagrams after access intervention. *Id.* Defendant Miller also incorrectly stated that Medicare does not reimburse the dialysis center for fistula monitoring. *Id.* During another presentation, Defendant Miller stated that follow-up fistulagrams should be performed at intervals that are "ideally . . . just before" clinical measures of dialysis function decline. *Id.* at ¶133. However, Defendant Miller also stated that it is not

3

possible to predict when the dialysis treatments will become inefficient. *Id.* Beginning in at least October 2011, through at least August 2020, Defendants regularly scheduled follow-up visits with patients after they performed a referred procedure. *Id.* at ¶¶ 126– 127, 159. These follow-up visits, which typically entailed a fistulagram and angioplasty, were entirely "self-referred," that is, scheduled without obtaining the required referral from the treating physician or requesting the patient's recent dialysis records. *Id.* ¶¶ 126–27, 146. Relators plead specific allegations as to six individual Medicare patients—five who were treated in New York and one in New Jersey—each of whose experiences with Defendants included a combination of the following features. *See generally id.* at ¶¶ 163–243. First, to facilitate the self-referral, Defendants generated false patient records that provided either no reason for the follow-up visits or an insufficient reason, such as to monitor unspecified future problems. *Id.* at ¶ 146. Defendants also falsified patient records to indicate that future visits were referred by the treating physician who made the initial referral. *Id.* at ¶ 147. At the beginning of the visits, Defendants performed a cursory physical examination, during which they would observe a purported vibratory sensation to justify immediately performing an unnecessary procedure without conferring with the treating physician or referring to clinical data from recent dialysis sessions. *Id.* at ¶ 151. Defendants sometimes provided patients with free transportation, usually in a limousine, and free meals upon arrival. *Id.* ¶ 134. Defendants also told patients that their dialysis treatment would not be successful if they did not return for the follow-up visits. *Id.* ¶ 141. In some cases, Defendants self-referred patients as many as ten times over two years for unnecessary procedures. *Id.* at ¶ 155

According to the FAC, and on information and belief, Defendants use uniform operational and billing procedures across their nationwide network of vascular access centers. *Id.* at ¶ 162. The average reimbursement for the types of vascular intervention procedures that Defendant performed

was approximately $2,500. *Id.* at ¶ 273. Defendants electronically submitted claims to Medicare Part B on CMS Form 1450 for payment each time a patient received services at an FVC clinic. *Id.* at ¶ 309. According to aggregated Medicare Part B payment data from 2012 through 2014, 28 of the 42 physicians listed on Defendants' website ranked in the top 30 total physicians for number of services performed in their respective states and specialties. *Id.* at ¶ 290. Ten of those physicians were the largest single provider of Medicare services in their respective state and specialty. *Id.* at ¶ 291. And 28 of the 38 FVC physicians for whom 2012 data was available ranked in the top 10% for services per patient in their respective state and specialty. *Id.* at ¶ 292. In 2013, FVC physicians received over $82 million from Medicare Part B, and in 2014, $148 million. *Id.* ¶ 293–94.

Relators filed their initial qui tam complaint under seal in June 2014. Original Compl., ECF No. 1. The United States investigated the allegations over several years and Relators regularly amended their pleadings. On July 12, 2022, the United States filed a partial complaint-in-intervention, which brought federal FCA claims against Defendant FVC. U.S. Compl. in Intervention, ECF No. 48. The United States filed an amended complaint-in-intervention on August 2, 2022, which added Defendants Miller and American Access Care Physician, PPLC, a professional corporation that Defendant Miller owns in part. U.S. Am. Compl. in Intervention, ECF No. 63. Relators, in their Fourth Amended Complaint proceeded with federal FCA claims against Defendants FVC and Miller for alleged false claims submitted outside of New York. Relators also proceeded with remaining non-intervened state claims asserted against FVC and Defendant Miller, which included 15 counts under State FCA Laws: California, Colorado, Connecticut, Florida, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Nevada, North Carolina, Rhode Island, Tennessee, Texas, and Virginia. *See id.* On October 31, 2024, the District

Court dismissed Relators' FAC pursuant to Defendants' Motion to Dismiss for failure to satisfy the pleading requirements of Fed. R. Civ. P. 12(b)(6) and 9(b).

On August 4, 2025, Relators filed their current Motion to Amend Complaint along with a copy of their Fifth Amended Complaint ("5AC"). ECF 146. Relators claim their new allegations sufficiently plead nationwide claims against Defendants. Specifically, the 5AC newly alleges:

> Five specific patient examples from New Jersey and Georgia (¶¶ 317-354) involving unnecessary vascular access procedures performed at timed intervals that were billed not only to those states' Medicaid programs, as alleged in the States' intervention complaint, but also to Medicare (allegations Defendants have already answered); Two additional patient examples from Florida and New York showing the same pattern of unnecessary procedures (¶¶ 355-359); "Spike" charts analyzing CMS reimbursement data from four representative FVC facilities (in FL, CA, IL and NJ) to graphically illustrate how, from 2012-2023, FVC patients nationwide were automatically scheduled for a 90-day follow-up visit during which unnecessary vascular access procedures were performed and billed to Medicare (¶¶ 312-316); Detail concerning an FVC-generated list (that was attached to the U.S. intervention complaint and will be an attachment to the 5AC) showing over 42,000 FVC clinically-timed evaluations ("CTE") performed over a five-year period (2011-2016) at 46 different FVC facilities in eighteen different states, and that in the overwhelming majority of cases "pulsatility" or some other "soft" sign was used to justify a fistulagram and a subsequent angioplasty (¶¶ 306-311); Examples of Miller's personal enforcement of the CTE protocol among FVC physicians in Florida and Tennessee (¶¶ 386-391); and Detail regarding Defendants' initial adoption of the CTE strategy, their efforts at promoting it externally and to enforce its adoption throughout the company, both within and outside of New York State (¶¶ 23, 360-391).

Mot. at 2-3.

## LEGAL STANDARD

Courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Coniglio v. Cucuzza,* 345 F.R.D. 372, 377 (E.D.N.Y. 2024) (citing *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) (holding that leave to amend is entrusted to the court's discretion)).  Doing so "encourages courts to determine claims 'on the merits' rather than disposing of claims or defenses based on 'mere technicalities.'"  *Exec. Trim*

*Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 366 (N.D.N.Y. 2021) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000)).

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, after a party has amended once as a matter of course, or after the window for amendments as a matter of course has closed "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011); Thus, "Federal Rule of Civil Procedure 15(a) dictates that motions to amend complaints be liberally granted absent a good reason to the contrary . . . ." *Assam v. Deer Park Spring Water, Inc.,* 163 F.R.D. 400, 404 (E.D.N.Y. 1995).

"[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 200-01 (2d Cir. 2007). "The party opposing amendment bears the burden of demonstrating good reason for denial." *Debrosse v. City of New York*, 2016 WL 3647589, at *5 (E.D.N.Y. May 25, 2016) (citing *Speedfit, LLC v. Woodway USA, Inc*., 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015)), *adopted by*, 2016 WL 3647590 (E.D.N.Y. June 30, 2016).

"Mere delay ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *201 State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (affirming grant of motion to amend after seven-year delay, where defendant did not

show prejudice). "The concepts of delay and undue prejudice are interrelated—the longer the period of unexplained delay, the less will be required of the non-moving party in terms of showing prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).

"An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted). Following *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Under this heightened standard of pleading, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"In determining whether to grant leave to amend, the Court must accept the moving party's non-conclusory factual pleadings and draw all reasonable inferences in that party's favor, 'to determine whether the allegations plausibly give rise to an entitlement to relief.'" *Heinz-Wright v. City of New York*, 2016 WL 3627323, at *4 (E.D.N.Y. June 3, 2016) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)), *adopted by*, 2016 WL 3620759 (E.D.N.Y. June 29, 2016); *see also Konrad v. Epley,* 2013 WL 6200009, at *20 (E.D.N.Y. July 31, 2013), *adopted by,* 2013 WL 6200009 (E.D.N.Y. Nov. 25, 2013). Whether to allow a party to amend its complaint is left to the discretion of the Court. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993).

8

**DISCUSSION**

In the instant matter, Relators seek amendment of their Complaint to, among other things, add additional factual allegations and plead their nationwide claims with greater particularity. Defendants object to Relators' Motion, arguing that amendment would unduly delay proceedings, that Plaintiffs' delay in amending is prejudicial, and that the proposed amendment is futile. *See generally* Opp'n. For the sake of brevity, this Court will analyze undue delay and prejudice together as those two concepts are interrelated. *See Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).

### I.    Undue Delay and Prejudice

Ostensibly, it appears that Relators' Amendment would unduly delay the proceedings given that this would be Relators' sixth Complaint over the twelve-year span of the case. However, Relators' prior amendments are of no import as the alleged purpose of those earlier amendments was to "alert the government to the scope of Defendants' fraud, [rather than] to respond to pleading challenges" while the case was under seal. [3] Reply at 1. Furthermore, "[m]ere delay ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd.*, 654 F.2d at 856 ; *Commander Oil Corp.*, 215 F.3d at 333 (2d Cir. 2000) (affirming grant of motion to amend after seven-year delay, where defendant did not show prejudice). "The concepts of delay and undue prejudice are interrelated—the longer the period of unexplained delay, the less will be required of the non-moving party in terms of showing prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).

---

[3] *Compare with U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-cv-0704, 2009 WL 1456582, at *10 (E.D.N.Y. May 22, 2009) ("While [relator] has amended his complaint on three prior occasions, it was not in response to a motion by [defendant]. Instead, it occurred during the period when the complaint was sealed while the United States Attorney was making a judgment as to whether to intervene.").

In the instant matter, Defendants contend that Relators delayed far too long in seeking amendment as their current Motion comes more than seven months following the District Court's Dismissal Order rejecting all of Relators' non-intervened claims. *See* Opp'n at 7. Relators contend that they filed their Motion seven months following the dismissal order because they "worked diligently to investigate and add over 90 paragraphs to their complaint to address the specific deficiencies identified by the Court." Mot. at 6; *see also* Reply at 4.

The Court does not find Relators' delay to be of bad faith or unduly prejudicial. Typically, in gauging prejudice, a major factor courts consider is whether amendment would require the nonmoving party to "expend significant additional resources to conduct discovery." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir.2008). Here, formal discovery has yet to commence. Furthermore, Relators do not seek to add additional claims nor parties as the proposed amendment only seeks to add new factual allegations that serve to bolster their preexisting claims. *See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs.*, P.C., 246 F.R.D. 143, 148-49 (E.D.N.Y. 2007) ("Prejudice is generally found where ... the amendment brings entirely new and separate claims, adds new parties or at least entails more than an alternate claim or a change in the allegations of a complaint.").

Additionally, Defendants are misguided in their contention that the District Court "implicitly denied leave to further amend" in the October 31, 2024, Dismissal Order. Opp'n at 9-10. The District Court in that order did not explicitly state that Relators were denied leave nor did the District Court grant dismissal with prejudice. The District Court granted dismissal under Fed. R. Civ. P. 9(b), and "Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend. *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (citing 2A J. Moore & J. Lucas, Moore's Federal Practice, ¶ 9.03 at 9–34 (2d ed. 1986) and *Yoder v. Orthomolecular Nutrition*

*Institute, Inc.*, 751 F.2d 555, 562 (2d Cir.1985)). In cases where such leave has not been granted, plaintiffs have usually already had one opportunity to plead fraud with greater specificity. *See, e.g., Armstrong v. McAlpin*, 699 F.2d 79, 93–94 (2d Cir.1983); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982); *Denny v. Barber*, 576 F.2d at 470–71. Even if the District Court did deny Relators leave to amend, the Second Circuit has held that dismissal under Rule 9(b) of complaints without granting leave to amend constitutes abuse of discretion. *Luce*, 802 F.2d at 56-57; *Foman v. Davis*, 371 U.S. 178, 182 (1962). Therefore, the Court does not find Plaintiffs' delay in seeking amendment to be of bad faith or unduly prejudicial.

## II.    Futility

Defendants contend that Relators' Fifth Amended Complaint fails to state federal and state FCA claims with the requisite particularity prescribed under Fed. R. Civ. P. 9(b). *See* Opp'n at 20-25. Defendants, as the party opposing the amendment, bear the burden of proving futility. *Ramirez v. Cnty. of Nassau*, 345 F.R.D. 397, 404 (E.D.N.Y. 2024). "To overcome objections of futility, the moving party must merely show that it has 'at least colorable grounds for relief.'" *Copantitla v. Fiskardo Estiatorio, Inc.*, 9-cv-1608 (RJH) (JFC), 2010 WL 1327921, at *3 (S.D.N.Y. Apr. 5, 2010) (citing *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir.1984)). An amendment is futile if "the proposed claim could not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss." *Salazar v. Brown Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 383 (E.D.N.Y. 2011). To survive such a motion, a complaint must contain sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must accept the material facts alleged in the amended complaint as true and draw all reasonable inferences in the plaintiff's favor.

11

*Pikington N. Am., Inc.*, 2021 WL 4991422, at *5 ("As is the case when considering a motion to dismiss under Rule 12(b)(6), the Court is required to 'accept the facts alleged by the party seeking to amend as true and construe them in the light most favorable to that party.'" (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005)).

Here, Defendants first claim that the example patient allegations in the Fifth Amended Complaint (¶¶ 317-54) are too "sparse and vague to support an inference of fraud" in the referenced states, let alone nationwide. Opp'n at 21 (citing *U.S. ex rel. Suarez v. AbbVie*, 503 F. Supp. 3d 711, 730-31 (N.D. Ill. 2020)). Defendants further allege that over thirty paragraphs regarding three additional example patient allegations were copied and pasted from the States' Consolidated complaints-in-intervention that Relators sought to "repurpose in support of a nationwide federal FCA claim." Opp'n at 21. However, upon inspection of these allegations in the 5AC, along with particularized examples provided of patients from those states, the Court finds that Relators sufficiently state a claim that Defendant facilities plausibly submitted false Medicare Claims. 5AC at ¶¶ 317-54. Furthermore, as Relators duly pointed out, Defendants did not seek to dismiss these same allegations when filing their Answer to the States' Intervention Complaint. Reply at 7. Second, Defendants allege that ¶¶ 386-91 of the 5AC constitute "vague allegations" regarding "disagreements" between two physicians and Dr. Miller and are insufficient to state an FCA claim. Opp'n at 22. However, to label the allegations in these paragraphs as mere "disagreements" between physicians is a mischaracterization. These paragraphs allege that Defendant Doctor Miller was pressuring physicians to perform unnecessary procedures on patients, with the 5AC even alleging that Defendant Miller asked one of physicians "[h]ow can you expect to make money if you are sending 80% of the patients home?" 5AC at ¶ 389. Third, Defendants allege that the "spike charts" provided in ¶ 315 of the 5AC are, among other allegations, indecipherable, and that such

"generalized" and "aggregate data" regarding the quantity and frequency of visits cannot support an FCA claim. Opp'n at 22-23. While such an assertion on its own is ostensibly convincing, it mischaracterizes Relators' reasoning in incorporating these spike charts in their 5AC. Relators incorporate these charts simply to demonstrate that Defendants perform interventional procedures on timed schedules rather than in response to individualized needs, which is a central issue in this case. Reply at 8. Fourth, Defendants take issue with the CTE chart provided as "Exhibit 2" to the 5AC, alleging, similarly to their last point, that such a chart provides no basis to infer fraud. Opp'n at 23. However, it appears that Relators provided this exhibit to support their assertion that "[o]ver 72%, a suspiciously high percentage, of the procedure entries provide 'pulsatility' or other subjective indicators as the justification for sedating the patient and performing an invasive fistulagram." 5AC at ¶308. Fifth, Defendants take issue with the 5AC's inclusion of Dr. Miller's professional activities and titles, namely that of "Authorized Official" and how that title relates to the fraud alleged. Opp'n at 23-24. The Court finds that the 5AC alleges that as an "Authorized Official" under 42 C.F.R. § 424.502, Defendant Miller had a duty to ensure that "the organization [FVC] fully abide[s] by the statutes, regulations, and program instructions of the Medicare program." 5AC ¶393; *see also* Reply at 9. Thus, the Court does not find any of these new allegations to be futile.

Lastly, Defendants claim that when the District Court dismissed Relators' non-intervened claims, the FCA public disclosure bar precluded Relators from using public information to revive their case, particularly that information contained in the U.S. and States' complaints-in-intervention. Opp'n at 24. Defendants are correct in their contention that the FCA requires courts to "dismiss an action or claim… if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed." 31 U.S.C.A. § 3730(e)(4)(A). A relator's allegations

are deemed "substantially the same" as public allegations if they would expose the same "essential elements" as the publicly aired fraud. *See U.S. ex rel. Kester v. Novartis Pharms. Corp.*, 43 F.Supp.3d 332, 346 (S.D.N.Y.2014); *see also U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1159 (2d Cir.1993). Here, there is no dispute among parties that Relators' allegations in their 5AC are substantially similar to those located in the U.S. and States' complaints-in-intervention. *See* Reply at 9 ("Relators incorporated certain allegations from the governments' complaints"). However, what both parties failed to discuss is that Relators may be excepted by this public disclosure bar if they qualify as an "original source" under 31 U.S.C.A. § 3730(e)(4)(B).[4] An "original source" must have direct and independent knowledge of the information incorporated in any amended complaint. *Rockwell Intern. Corp. v. United States*, 549 U.S. 457, 473 (2007). In other words, the "core information" on which the qui tam complaint is based cannot come from a third party. *United States v. New York Med. Coll.*, 252 F.23d 118, 121 (2d Cir.2001) (per curiam); *see also Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F.Supp.2d 282, 300 (S.D.N.Y.2013). Ultimately, the "public disclosure requirement was 'designed to preclude qui tam suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it.'" *U.S. ex rel. Feldman v. Van Gorp., 674 F.Supp.2d 475*, 482 (S.D.N.Y.2009). Here, although some of the information contained in the 5AC appears to come directly from the U.S. and States' complaints-in-intervention, Relators possessed direct and independent knowledge of the allegations in the intervenor complaints. As alleged in the 5AC:

> The allegations in this Complaint are based upon information and documents Relators learned and discovered first-hand during the course of performing their professional responsibilities, from their personal interactions with Defendants'

---

[4] Original source "means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2)[3] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C.A. § 3730(e)(4)(B).

14

facilities, and from their discussions with individual patients who were and remain subjected to Defendants' fraudulent scheme. The allegations are also based upon ongoing investigations that Relators and Relators' counsel undertook during the course of this litigation including, but not limited to, interviews with potential witnesses, analysis/monitoring peer reviewed clinical studies, review of defendant Miller's professional history and present activities, review of updated professional guidelines, review of documents discussing serial interventions on ESRD patients, and extensive analyses of CMS data generated through at least 2023.

5AC ¶17. The Court in *United States ex rel. Kolchinsky v. Moody's Corp.* found relator to be an "original source" as he possessed direct and independent knowledge from his time working with Defendant and his previous attempts to raise concerns regarding Defendant's fraud. 162 F. Supp. 3d 186, 194 (S.D.N.Y. 2016). Here, Relators, like the relator in *Kolchinsky*, possessed direct and independent knowledge from, among other things, their personal interactions with Defendants. Therefore, the Court finds Relators were an "original source" for the alleged fraud and reject Defendants' public disclosure bar argument.

Therefore, the Court does not find Relators' proposed amendment to be futile.

## CONCLUSION

For the foregoing reasons, this Court GRANTS Relators' Motion for Leave to Amend their Complaint ("Motion").

**SO ORDERED.**

/s_____
Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
March 31, 2026

15